# RICHARD F. HASTINGS,

## *vs.*

# ZORABABEL H. H. CROPPER, WILLIAM HITCH AND AARON B. MARVEL, LATE SHERIFF, &C.

*Sussex, Sept. T.,* 1867.

Upon the death of two or more co-plaintiffs or co-defendants in a judgment, the proper practice is to suggest the death upon the record, and take execution for or against the survivor or survivors.

Irregularity of an execution is not a ground for equitable interference to restrain its operation, it is only where a conflict arises between a claim to the fund under the execution and a claim arising under some other process, involving parties not within the jurisdiction of the court of law, that equity need interfere under a bill of interpleader.

Under the seventh section of chapter 104, of the Revised Code, the garnishee is *ipso facto* discharged at the expiration of the second term after he was summoned, but, if the Statute be so construed as to make the discharge take effect ·only upon the order of the Superior·Court, upon application by the garnishee, still, as his right to be discharged is absolute, and he has the means of relieving himself, and can by no means be held responsible to the attaching creditor under the summons, he has no need for relief in equity.

A bill of interpleader is an appropriate remedy in equity for the relief of a party against whom there are, at law, separate and conflicting claims, whether in suit or not, for the same debt, duty or thing, and where *a recovery by one of the claimants will not, at law, protect the party against a recovery for the same debt or duty by the other claimant.*

Where a suit is pending to recover a debt, and the debtor is summoned as a garnishee of his creditor for the same debt, so long as judgment in the attachment may be reached before the creditor can ·prosecute his suit to judgment, a bill of interpleader will not lie, otherwise if the debt is attached after judgment recovered for it.

Where the facts present a proper case for an interpleader, equity will not entertain a bill simply to restrain one of the parties claiming the fund in controversy, from ·prosecuting his claim until the other party has failed to establish his claim.

When a court of equity interferes to restrain a party from prosecuting his legal rights, it must, at the same time, secure the protection of all parties inter-

ested in the subject matter, and afford them the means by which their respective rights may be ascertained, and satisfaction obtained by the party really entitled. This is accomplished under a bill of interpleader, by the requirement that both the fund or property in dispute, and all parties claiming, be brought before the Court and, also, that the party filing the bill accompany it with his oath denying collusion.

Where, upon a bill filed for an injunction to restrain one of two claimants for a single fund or property, a case appears proper for an interpleader, leave may be given, upon proper terms, to amend the bill so as to make it a bill of interpleader, by adding proper parties, bringing the fund or property into Court and filing the proper affidavit denying collusion.

BILL FOR AN INJUNCTION TO STAY PROCEEDINGS AT LAW.—The principal facts of this case were alleged by the bill and admitted by the answers. It appeared that on the 12th of October, 1849, judgment was recovered by the defendant, Cropper, and Samuel B. Hitch, deceased, late trading as Cropper and Hitch, against the complainant and James C. Dunning, late trading as Hastings and Dunning, for $544.94 and costs, with interest from the same date. On the 20th of July, 1863, Hitch died, leaving the judgment wholly unpaid. The bill alleged that Cropper, as surviving partner, was entitled to collect the judgment, and that no assignment of the judgment or any part of it, was made before or since Hitch's death, while the answers claimed that, in 1850, the partnership was dissolved and that, in a division of debts due to the firm and deemed hopeless, this judgment was taken by Hitch and from that time treated as his property, though no actual assignment was made, as Cropper resided in Baltimore, and it was not deemed worth the trouble and expense ; and the proceeds, if collected, would belong to Hitch's estate. It further appeared that execution upon the judgment was caused to be issued by William Hitch, the executor of Samuel B. Hitch, whose death had, however, not been suggested, nor his executor made a party. Under the execution, the Sheriff, Marvel, levied upon complainant's goods and advertised them for sale, November 30th, 1864.

On November 23rd, 1864, a foreign attachment at suit of Nathaniel Horsey was issued against complainant and Thomas J. Cropper, trading as Cropper and Brother, and on November 24th, complainant was summoned as a garnishee.

The defendants denied that Cropper was indebted to Horsey, and alleged that the attachment was got out through collusion with the complainant, and, also, that it was a misjoinder to make Marvel and Hitch parties.

There were no depositions, and the proofs consisted of the records of the various proceedings at law, referred to in the pleadings.

*Cullen*, for the complainant.

The question raised is, who is entitled to the money, whether Cropper and Hitch, (as the record stood,) or the surviving partner. If complainant had paid, as the record stood, he might be made liable again to the survivor. The execution is irregular, because, (1,) not at suit of the surviving partner alone, and (2,) even if Hitch's interest has not survived, his executor should have been made a party, and this irregularity is material, for the reason stated.

The claim that, under the alleged division of assets, Cropper had no interest in the judgment to be affected by the attachment, does not avail, for want of an assignment on the record, as required by rule of Court, under which no interest in a judgment can be recognized unless assigned.

Hitch being dead, the judgment survived to Cropper, but the interest of one partner, as ascertained after debts are settled, may be attached, even if both were alive. *Colly. on Partn. Sec.* 818, 821 *and note ;* and this, unquestionably, where there are no joint debts. *Drake on Att. sec.* 567. All cases cited in the books to the contrary,

proceed upon the ground that there are joint debts. *Hawes vs. Langston*, 8 *Pick.* 71 ; *McCarty vs. Emlen*, 2 *Dall.* 277 ; *Pierce vs. Jackson*, 6 *Mass.* 242. Here no debts of the firm are shewn, and it is presumed there were none, and this allegation of an assignment to Hitch of this judgment, shews there were none.

A debt due by judgment and execution levied, is subject to a foreign attachment. *Belcher vs. Grubb*, 4 *Harring.* 461 ; and debts due to the survivor are always attachable. *Drake on Att. Secs.* 571, 622, 623, 624, 627 *and* 88 ; *McCarty vs. Emlen*, 2 *Dall.* 277.

*W. Saulsbury* and *Wright*, for the defendants.

This is the only instance in which a debtor has sought to restrain his creditor on the ground of an attachment, without a bill of interpleader, which, in such a case, is necessary. 2 *Eden on Inj.* 395. Such a bill usually prays an injunction, and on bringing the money into Court, would prevent sale. *Sto. Eq. Pl. Sec.* 297. And such a course would be proper to decide the issue here, which is between an equitable claim under the assignment to Hitch, and one at law, under the attachment. 2 *Eden on Inj.* 400, *note* 2 ; *Langston vs. Boylston*, 2 *Ves. Jr.* 101 ; *Hillyard on Inj.* 163, 200.

Under such a bill collusion must be negatived.

If the execution were irregular, there is a complete remedy at law. But it is not so, because it follows the judgment, which it must do. *Bing. on Judg.* 58 (136) ; *Hamilton vs. Lyman*, 9 *Mass.* 13.

As to the validity of the attachment, we do not question that a debt in execution may be attached, as decided in this State, in *Belcher vs. Grubb*. The question we raise is, whether Cropper has any attachable interest in this debt. It is a settled principle that the attaching

creditor can stand on no better footing than his debtor. *Drake on Att. Sec.* 604. The equitable assignment to Hitch is sufficiently shewn, and the rule of the Superior Court, as to assignments, does not apply here ; the record of the judgment is not conclusive on a court of equity as to who is really entitled. *Barber vs. Hartford Bank*, 9 *Conn.* 407 ; *Drake on Att. Sec.* 604.

The record of Horsey's foreign attachment shews collusion ; they have the same counsel, and Horsey, proceeds to judgment against Cropper, yet Hastings has not answered, and there is no judgment against him. Where special relief is prayed, a Court cannot relieve under the general prayer. Here a relief cannot be granted as prayed, *i. e.* an injunction, until the attachment is dissolved, and the proper relief, an order to bring the money into Court, have the debts of Cropper and Hitch paid, and the residue applied to the attachment, cannot be granted because other special relief is prayed.

Hastings had an ample remedy, at law. As he admits he owed the money, he could pay the 'Sheriff, and apply to the Court to stay payment until the attachment should be determined.

*Moore*, for the complainant, in reply.

The defendants are benefited by the non-joinder of Horsey, and cannot take advantage of it. They have not, by demurrer, pleading, petition or otherwise, up to hearing, objected to the want of a bill of interpleader, nor sought to have Horsey brought in. They even object that Hitch (who they, by the same answer, allege to be the real party intended) ought *not* to be a party. It is now too late for this objection. A bill of interpleader is not required for such case as this. *Atkinson vs. Manks*, 1 *Cowen* 703.

22

As to the execution, whether regular or not, Cropper as surviving partner is entitled to the control of it and its proceeds.    9 *Mass.* 19 ; 1 *Dall.* 248 : *Rev. Code.* 375—6.

There is no interest in Hitch. No formal legal assignment ; the answer does not shew an equitable sssignment, it is not specific, nor is it a denial, but an evasive reply which is not evidence ; the fact of assignment is not available against Hastings but only against Horsey ; and finally there is no proof to sustain the answer.

In either view of the fact, as to an equitable assignment, Hastings is not bound for costs.

THE CHANCELLOR :—

This bill is filed to restrain the execution of a judgment in the Superior Court at suit of Cropper and Hitch against Hastings and Dunning, recovered October 12th, 1849, for $544.94 and costs.

One of the complainant's grounds for relief is that, notwithstanding Samuel B. Hitch, one of the plaintiffs in the judgment, had died, and the judgment survived to Cropper, the execution was issued in the name of both the original plaintiffs, as though Hitch were still living ; whereas Hitch's death should have been suggested on the record, and execution taken in the name of the surviving plaintiff. · I think the course indicated by this objection would have been the proper one, although there is apparent authority to the contrary in *Bingham on Judgments*, (137) (13 *L. L.* 58) and 2 *Tidd. Pr.* 1120, *Ed'n. of* 1856. It is there said that where one of several plaintiffs or defendants in a judgment dies, the survivor, not being a new party, may have execution without a *scire facias* ; but these writers add, "the execution in such case should be taken out in the joint names of all the plaintiffs or defendants ; otherwise it will not be warranted by the judgment." They cite as authority only the case of *Pennoir vs. Brace*, 1 *Salk.* 319 and

1 *Ld. Raym.* 244; so 2 *Wms. Saund.* 72 *k*.   But this decision does not establish the rule that, after the death of a joint plaintiff or joint defendant, execution should properly be taken in the name of all the original parties, including the one deceased.   In that case, execution was issued against four defendants, one of whom was dead.   There was no suggestion of the death on the record.   The Court only held that as the death did not appear by suggestion on the record, by which, alone, it could be judicially noticed, the execution, though in the names of all the original defendants, was not erroneous, and the Court said, speaking only of the case as shown by thy record, "that if the execution taken out had been against three only, omitting the fourth, it had been erroneous because not warranted by the judgment."   But that to suggest death of one plaintiff or defendant and take execution only for or against the survivor was, in the time of Lord Raymond's Reports, considered the proper practice appears from what Ld. Holt says in *Withers vs. Harris*, 2 *Ld Raym.* 808, that, "when there are several plaintiffs or defendants, and one of them dies, execution may be sued by or against the survivors upon suggestion of the death made upon the roll."   I have met with no other *dictum* or decision upon this point.   An examination of the records of our Courts of law would doubtless show a practice in accordance with the *dictum* of Ld. Holt.

But taking the *fi. fa.* to have been in this respect erroneous, is that a ground for equity to interfere and restrain proceedings under it?   The complainant admits the judgment to be due and still unpaid.   Of course the irregularity in the execution does not discharge his liability to pay the judgment.   That is not contended.   But it is argued that, under the execution issued in this form, the judgment may, at law, be collected by Hitch's executor, who is not entitled to it, and that the complainant may afterwards be compelled to repay it to Cropper, the

surviving plaintiff. If this were so, and the complainant could have no relief at law, equity would interfere so far as to permit the complainant to bring into this Court, or would order the Sheriff, if it had been collected by him, to bring it into this Court, so that it might be properly applied to the judgment, and the complainant thus protected against any further claim. But this, the only form of equitable relief applicable to such a case, cannot be here given. (1) The complainant's bill does not seek it. The complainant does not bring the money into this Court and ask to be protected in the application of it ; but he simply prays an injunction against the further execution of the judgment. (2.) Even had the complainant brought the money into Court and sought to have it here applied, a sufficient ground for resort to equity would not have existed, for the Superior Court could have afforded him ample relief. With respect to the application of money raised by its own process, a court of law, as between parties claiming only under that process, having jurisdiction of them all, exercises all the powers of a court of equity. It is only when a conflict arises between a claim to the fund under the execution, and a claim arising under some other process, involving parties not within the jurisdiction of the court of law, that equity need to intervene upon a bill of interpleader.

The complainant might have paid the money to the Sheriff, (as easy to be done as to bring it into this Court for relief here,) and at the return of the writ, obtained a rule on the Sheriff to bring the money into Court, and thereupon the Court would (had its interference been necessary to the complainant's protection) have ordered payment to the surviving plaintiff. A court of equity could do no more. But (3.) It does not appear how the complainant needed such protection either in equity or at law. For his bare payment of the money to the Sheriff, or its collection under the *fi. fa.*, must have fully discharged him, notwithstanding the irregularity of the execution.

The Sheriff would have been bound to pay it to the party legally entitled to it, viz ; the surviving plaintiff. His right was not affected, nor any doubts as to it raised, by the form of the execution. The Sheriff could not have paid it to a deceased plaintiff, and had he paid it to the executor of Hitch, it would have been at his own peril. Cropper's remedy would then have been against the Sheriff, not against the defendant in the *fi. fa.*

The fact alleged in the bill that the executor of Hitch was directing the execution, and assumed to be entitled to its proceeds, is immaterial, even if true ; because, as this circumstance could not affect the rights of Cropper, the surviving partner, (and the bill so assumes,) it would remain none the less the right of the complainant to pay the surviving partner, and discharge himself, or none the less the duty of the sheriff if the money were made on the execution, to pay it to Cropper, the party legally entitled to it.

But it was insisted in the argument that the irregularity in the *fi. fa.* must, at least, entitle the complainant to his costs, inasmuch as his goods being advertised for sale before the then next ensuing term of the Superior Court, he was obliged to resort to this Court for relief. But I have not been able to see that the complainant needed any relief in equity, that he was entitled to. All the relief anywhere, that he could be entitled to. was the proper application of the money. This, in the view already taken, the complainant was secure of in the obligation of the Sheriff to apply it properly, and his responsibility, should he misapply it. Or if this was doubtful, the money could have been ordered into the Superior Court and applied under its direction, and aside from all this, even if relief in the due application of the money was needed from this Court, the complainant has not, by this bill, sought it, *i. e.*, by bringing in the money, and submitting to this Court the application of it, so far as its application might not be affected by the attachment. What the complain-

174        HASTINGS v. CROPPER, ET AL.

Opinion :—the attachment now dissolved by force of the Statute.

ant seems really to have been seeking was relief against having the money raised. But in this neither a court of law or equity could assist him. For the judgment is admitted to be unpaid and due to some one. I cannot, therefore, allow the complainant costs on this ground.

I, therefore, lay out of consideration the irregularity in the execution, and proceed to what was the main ground relied on for restraining the collection of this judgment, viz ;—that the money due upon it had been attached in the hands of the complainant, under a foreign attachment at suit of Nathaniel Horsey against Cropper and Brother, Zorobabel H. H. Cropper, the surviving partner of Cropper & Hitch, and to whom, as such, the judgment had become payable, having been also a member of the *late* firm of Cropper & Brother, the defendants in the attachment.

It appears that, on the 24th of November, 1864, days after the *fi. fa.* was levied on Hasting's goods, Hastings and Dunning were summoned as garnishees under the foreign attachment ; and thereupon Hastings filed his petition, praying an injunction until the attachment should be dissolved ; and the injunction was granted. Why Dunning was not joined in the petition and bill, does not appear.

The complainant's claim to relief against the attachment I am obliged to dispose of without reaching the questions discussed at the bar. Whether the debt secured by this judgment was or was not subject to this attachment, or, if so, whether, while the attachment was in force, the debtor's remedy was by this bill, or only by an interpleader—it matters not now. For under the provisions of the seventh section of the chapter on attachments, *Rev. Code*, 639, the garnishee is already discharged, and the object of the injunction satisfied. The Statute gives to the attaching creditor power to compel the garnishee to answer, and provides that "he shall be so compelled, "within two terms, or the attachment shall, as to him, be "dissolved." This complainant was summoned, as a

garnishee, on the 24th of November, 1864,—so his bill states, and so it appears by the record of the foreign attachment made an exhibit in the cause. By the same record it also appears that the garnishee has not answered, nor any process been taken to compel him to answer. I take it that, by the terms of the Statute, he became, at the expiration of the second term of Court after he was summoned, *ipso facto* discharged ; but even if the Statute be so construed that the discharge is to take effect only upon the order of the Superior Court, upon application by the garnishee, still, as the right of the garnishee to be discharged is absolute, and he has the means of relieving himself, and can by no means be held responsible to the attaching creditor under the former summons, he has·no further need for relief in equity. The prayer of his bill is, that the collection of the judgment be restrained until the attachment be dissolved. The attachment is dissolved, or, at the very least, may be, upon the complainant's application to the Superior Court. I feel obliged, then, to dissolve the injunction, and to dismiss the bill, though, if the bill were properly filed under the circumstances then existing, the complainant is entitled to his costs.

This consideration renders it necessary to inquire whether, as the case stood at the filing of the bill, the foreign attachment being then in force, this complainant was entitled to the relief prayed for. The ground of relief relied on is, that the complainant,having been summoned as a garnishee of the debt secured by the judgment of Cropper and Hitch, might, after it should be collected from him under the *fi. fa.*, be still held for it under the attachment. Now, assuming that the attachment of the debt secured by this judgment was valid, as insisted by the complainant, and that he was in the situation of a double liability, still the question arises which was much discussed —in what mode will equity relieve him ? May he, as has been done here, file a bill against the execution credi-

tor only, to restrain him from collecting the judgment until the attachment shall be dissolved? Or, should he file a bill of interpleader under which both the fund contested, and the claimants to it, are brought before this Court, so that not only may the complainant be discharged, but, also, justice done between the contesting parties, and the subject-matter of the controversy finally disposed of? Upon examination of this subject I entertain no doubt that the latter was the complainant's appropriate and only remedy. Let us consider under what circumstances a bill of interpleader is the appropriate remedy.

An interpleader is a proceeding in equity for the relief of a party against whom there are, at law, separate and conflicting claims, whether in suit or not, for the same debt, duty or thing, and where a *recovery by one of the claimants will not, at law, protect the party against a recovery, for the same debt or duty, by the other claimant.* It is out of this latter circumstance that the equity to relief arises. *Badeau vs. Rogers, 2 Paige* 209. For although, there may be two conflicting claims or processes pending against the same party, yet if his being fixed at law for one, discharges him from the other, he needs no relief, in equity, and a bill of interpleader does not lie.

Lord Cottenham in *Sieveking vs. Behrens, 2 Myl. and Cr.* 591, a case between assignees in bankruptcy and attaching . creditors, puts this point very clearly, when he says that the proceeding by interpleader, though necessary for the protection of the person against whom inconsistent claims are made, is yet a severe one upon the party really entitled, as it arrests him in the course of establishing a legal right, merely because some other person, who appears, ultimately, to have no title at all, sets up a claim. He, therefore, considered that so long as the course of proceedings taken, at law, by the different claimants was such as, if persevered in, would determine their respective rights as between themselves, an interpleader in equity should not be encouraged. He might

have put it more strongly and said it should not be allowed. The observations of Lord Loughborough, in *Langston vs. Boylston*, 2 *Ves. Jr.*, 109, are too broad.    They seem to imply that, under all circumstances, conflicting claims against the same party, for the same thing, are a ground of interpleader. They must be understood with the qualification here stated.  It is not, then, the mere inconvenience to a party of being subjected to different claims, but it is his liability at law, to a double payment, or double duty, from which equity will relieve him.   Thus, although a suit may be pending to recover a debt, and, at the same time, the debtor be summoned as a garnishee of his creditor for the very debt in suit, yet so long as judgment in the attachment may be reached before the creditor can prosecute his suit to judgment, equity will not intervene, because a  judgment of the attachment creditor against the garnishee discharges his liability to his creditor and may, before judgment is recovered by his creditor, be pleaded in defense, at law.   But if, *after* judgment recovered for a debt, it is attached, a bill of interpleader will lie, for it is then too late—the creditor of a garnishee having recovered judgment—to plead the attachment.   It should be further remarked, in order to show the exact nature of this proceeding, that if a recovery in one of two proceedings against a party will not discharge him from the other, it matters not how doubtful may be the title of one of the claimants, this Court will, nevertheless, entertain a bill of interpleader.   The equity to it arises out of the fact that there are conflicting claims, the adjudication of one of which against the party, does not, at law, discharge him from the other.   He should not be left to weigh one claim against the other, or be at any risk as to their result, at law. *

---

*The rule as here stated is subject to a qualification which, as it does not apply to this case, is not stated in the opinion.    Agents, attorneys, tenants, &c., are not allowed to put their principals or landlords to interplead with strangers
    23

From this view of the object and grounds of an inter-
pleader, it is very clear that the complainant was entitled
to relief in that mode.    Here were two conflicting
claimants—the judgment creditor and the attaching
creditor.    Both claimed the same thing—the money due
upon the judgment.    The debtor admits that he holds the
money, is indifferent between the claimants, so far. as
appears, and is only concerned so to apply it as to be
discharged from liability to pay it again.    Yet this liability
to a second payment he cannot, at law, avoid, for if he pay

who claim by title paramount to that of the principal or landlord; because
whatever may be the title of the principal or landlord as against a stranger,
the agent or tenant, upon grounds of good faith and public policy, is not al-
lowed to question it.    *2 Story's Eq. Jur. Sec. 816.*

The claim of the principal or landlord, as against the agent or tenant
stands upon a ground wholly independent of the title to the property or the
debt or duty in question.    He could recover at law without shewing title
He should not be put to interplead with another whose only claim rests upon
the title, debt or duty.    Nor is an interpleader requisite for the protection of the
agent or tenant for, in most cases, his recognizing the title of his principal or
landlord absolves him from liability in any other direction, or if it is otherwise in
any case, he has his remedy against his principal or landlord, as in case of a ten-
ant sued for mesne profits after an ejectment.

On the other hand, to put a principal or agent to interplead with a stranger
would have this effect.    Either his claim founded on the agency or tenancy,
independent of actual title, would be recognized, in which case the inter-
pleader would accomplish nothing,    for the question would remain still
open to controversy, at law, or his special claim would be rejected, which would
be unjustly to deprive him of a clear legal right, and would be of very mischievous
tendency.    The result is that parties can be put to interplead only where their res-
pective claims upon third persons depend upon the common ground of title to
the thing in controversy, exclusive of any personal obligation to one of the par-
ties which entitles him to assert his claim irrespective of title.    The clearest view
of this subject is found in *Crawshay vs. Thornton, 7 Sim. 391,* and *2 Myl.
Cr. 1,* on appeal before Lord Cottenham.    But where the question is whether
the principal or landlord has himself created a lien or interest in another per-
son, an interpleader between him and that person will be entertained.    The
objections before stated, obviously, do not apply. *2 Sto. Eq. Jur. 817 and cases
cited.*

the judgment creditor, or suffer it to be collected from him, the attaching creditor may still pursue him ; if the attachment was well laid, its effect is not impaired by the subsequent collection of the judgment. The attachment being issued while the execution was pending, and before its return, application for relief could not be made to the Superior Court, even if adequate relief could have been then afforded.

Then this question arises. This being a case for an interpleader, will equity relieve the debtor in any other mode ? Will it entertain a bill simply to restrain the judgment creditor from execution, until the attachment be dissolved ? For such is the prayer of this bill. I think not. This course, it is true, may avail the debtor as fully as a bill of interpleader, but it is to be considered that equity, when it interferes to protect a party situated as this complainant is, must regard, also, the rights of the other parties in the subject of controversy.

It would certainly work great injustice if this Court should interfere to restrain parties claiming the same subject-matter, from enforcing their rights at law, one of whom it is admitted, must be entitled, and yet afford them, here, no means by which their respective rights may be ascertained, and satisfaction obtained by the claimant really entitled. Besides, to allow a debtor to do what is sought to be done here, to stay the collection of a debt acknowledged to be unpaid, on the mere ground that some third person claims it, without requiring him to bring the money and the alleged claimants before this Court, would create a very dangerous temptation to fraud by the setting up of collusive claims. Hence is the proceeding by interpleader, which, though its primary object is to protect the party owing the debt or duty, or holding the property claimed, contemplates in protecting him, the due security of the rights and interests of the other parties, and therefore requires him to bring before the Court

the fund or property in dispute, and the parties claiming, so that the Court may finally adjudge the whole controversy, and do justice to all concerned ; and as a further security against fraud, the complainant is required to accompany his bill with an oath, denying collusion with either of the claimants. There is no hardship in requiring this of the complainant. For he asks relief as one owing the debt or holding the property in dispute, as being ready to pay or deliver it, and indifferent as to who may be entitled to it.

A bill of interpleader is rendered none the less necessary for the relief of this complainant by the fact that the claim adverse to the judgment creditor being under foreign attachment, he has the legal right to dissolve it by giving special bail, so that, though enjoined, he may relieve himself. For still the question presses itself upon us, why should a court of equity interfere, because of the attachment, to arrest the creditor in the collection of a debt, admitted to be unpaid, without securing the fund, when this can be done with no injustice to any one, so that the creditor interfered with may, in the result, have what is his unquestioned right, viz :—payment of it to himself, if the attachment fails, or its application in discharge of his indebtedness to the attaching creditor, if the attachment be sustained ?

The question is governed by the fundamental principle in equity, that it will so deal with any subject-matter before it, as to finally adjudicate and secure all the rights attaching to it, which are in any way involved in the controversy. Among the reported cases of relief given upon bills of interpleader, are some in which one of the conflicting claims was under a foreign attachment. Such were *Langston vs. Boylston*, 2 *Ves. Jr.* 101 ; *Sieveking vs. Behrens*, 2 *Myl. & Cr.* 581. These cases shew, at least, that as well where one of the claimants is an attaching creditor, as in other cases, an interpleader is the appropriate remedy. See also *Hilliard on Injunctions*, *p.* 163 & 200.

Opinion :—the case of *Belcher vs. Grubb* criticised.

The frame of this bill seems to have been suggested by the action of the Superior Court, in *Belcher vs. Grubb*, 4 *Harring.* 461—where the Court stayed a *fi. fa.* issued against a debtor, who had been summoned as a garnishee under a foreign attachment, until the attachment should be dissolved. The Court considered that all credits, as well as those due by judgment and execution, as others, should be subject to attachment, and in order to make the attachment effectual, and to protect the debtor, stayed the execution until bail should be given. In the discussion of that case, the injurious operation of this order upon the judgment creditor was not brought before the attention of the Court. It restrained him from collecting an acknowledged debt until he should give bail in the foreign attachment, which it might be impossible for him, as a stranger, to do, to defend a claim, too, which might prove to be wholly unfounded ; the interference of the Court being grounded upon the mere formal affidavit of the attaching creditor, to an indebtedness of more than $50, and all this without requiring any guaranty against collusion, by the oath of the debtor in the *fi. fa.*, without any security from the debtor, even to the extent afforded in this Court by an injunction bond that the debt would be paid when the attachment should be disposed of,— the only security for this being the forthcoming of the goods levied on, or a suit against the Sheriff. Had the order made in that case been considered in all its bearings, we cannot doubt that the *fi. fa.* would have been stayed only upon condition of the debtor's bringing the money into Court. By this course, all the interests concerned would have been secured, for the attachment would have been made effectual, the execution debtor protected, and, at the same time, the creditor, upon dissolving the attachment, would receive the money to which he would then be entitled, without delay, or, if the attachment should be sustained, it being in the same Court, then the money might be applied to the attachment. This would have been

in accordance with the mode of relief, at law, suggested by the Lord Chancellor in *Langston vs. Boylston*, 2 *Ves. Jr.* 107. In that case Langston, a banker, having a *parcel* of value belonging to Boylston, was served with foreign attachments upon the parcel by Boylston's creditors, and, at the same time, was held to bail, in trover, for the parcel by Boylston. He filed his bill of interpleader. Lord Loughborough said that were he sitting in a court of law, he would have discharged Langston upon common bail, in the action of trover, and have stayed that action *upon his bringing into Court the parcel*, and thus have obliged Boylston to get rid of the attachments before allowing the action of trover to go on. It would seem, then, that in *Belcher vs. Green*, the payment of the money into Court should have been the condition of the Court's interference with the execution, as was the *bringing in of the parcel* in the case put by Lord Loughborough. If it so happen, in any case, that a court of law cannot conveniently thus deal with, and secure, all the interest involved in the controversy, it would seem better to remit the parties to their appropriate remedy in equity.

I must conclude, then, that even if the foreign attachment were not dissolved under the statute, the complainant could not have relief upon this bill. I should not, however, were the attachment still in force, feel obliged to dismiss the bill, but would be at liberty to give leave upon proper terms, to amend the bill so as to make it a bill of interpleader by making additional parties offering to bring the money into Court, and filing the proper oath denying collusion. But considering the attachment to be now dissolved, as against the complainant, there remains no ground for relief in any form, and I must enter a decree to dissolve the injunction and dismiss the bill with costs.

It will be observed that I express no opinion upon the question discussed at the bar, whether the judgment debt was bound by the attachment against Cropper & Brother,

the defendants, insisting that the judgment had been equitably assigned to Hitch in his life time, and that even if it had not been, and had passed to Cropper, as partner, that it was not subject to be attached for Cropper's individual debt, or for the debt of Cropper & Brother. This is a question with which the complainant has no concern. It is one between the contesting claimants, and can properly arise only under an interpleader between them. I ought not to adjudge it unless Horsey, the attaching creditor, were here, a party to be bound by the decision. The decision of such a question, in advance, would not be necessary to Hasting's right to relief by a decree for an interpleader. For it is the conflict of claims that would entitle him to relief, not the question which of the claims is valid, and which not so. The course of proceeding is this—the party subject to the conflicting claims files his bill of interpleader setting forth the claims, bringing into Court the fund, and the parties, and praying a decree for an interpleader. Thereupon it is decreed that he be discharged, and that the other parties interplead, which being done, the validity of their respective claims comes under adjudication, not before.